UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In the Matter of: ) | CHAPTER 7 PROCEEDINGS |
| ) | IN BANKRUPTCY |
| KALIED J. KANAN, ) | |
| Debtor. ) | Case No. 09 B 33071 |
| ) | |
| ) | |
| CHAMBERS & OWEN, INC., ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adversary Case No. 09-01274 |
| ) | |
| KALIED J. KANAN, ) | |
| Defendant. ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This matter came before the Court for trial on the Adversary Complaint seeking denial of discharge of the Debtor pursuant to 11 U.S.C. § 727(a)(3) and 11 U.S.C. § 727(a)(5). Plaintiff was represented by Jamie S. Cassel and Michael G. Schultz of Reno & Zahm LLP. The Debtor failed to appear, and did not present any evidence.

After hearing argument of counsel and reviewing the evidence presented, the Court hereby finds:

**I. FINDINGS OF FACT**

1. Defendant, KALIED J. KANAN, filed a voluntary Petition for Relief under Chapter 7 of the United States Bankruptcy Code on September 4, 2009 (the "Petition Date").

2. Plaintiff, CHAMBERS & OWEN, INC. ("CHAMBERS & OWEN"), is a creditor in that case.

3. Defendant, KALIED J. KANAN, is an individual residing at 8923 West 174th Street, Tinley Park, Illinois 60487.

4. CHAMBERS & OWEN is a Wisconsin corporation located at 1733 Morse Street, P.O. Box 1489, Janesville, Wisconsin 53547.

5. Defendant was a fifty percent (50%) owner of Danah 39th Avenue Shell, a business which operated a Shell convenience store and gas station (the "Shell Gas Station") in Kenosha, Wisconsin.

6. Defendant listed his fifty percent (50%) ownership interest in the corporation as having a "$0" value on his bankruptcy schedules.

7. The Defendant's fifty percent (50%) ownership interest in the Shell Gas Station, whether it is a corporation or a partnership, is an asset of the bankruptcy estate.

8. The Defendant asserts, in Schedule B of the Schedules filed in connection with his Bankruptcy case, that Danah 39th Avenue Shell is a corporation in which he owns fifty percent (50%) of the stock.

9. Defendant was a manager and co-owner of the Shell Gas Station at all times relevant to this case.

10. The Defendant applied for credit for the Shell Gas Station with CHAMBERS & OWEN on or about June 16, 2009.

11. The Customer Account Application submitted to obtain credit from the Shell Gas Station lists the applicant as "Danah 39th Ave. Shell" and also states that "I own the business & the Property."

12. Three (3) orders were placed by the Shell Gas Station with CHAMBERS & OWEN during the month of July 2009.

13. As a result of the three (3) orders that were placed, CHAMBERS & OWEN's delivery drivers, William Fike and Brian Sherwood, made three (3) deliveries to the Shell Gas Station.

14. At the conclusion of each delivery, William Fike or Brian Sherwood requested and received a signature from a representative of the Shell Gas Station acknowledging receipt of the merchandise listed on each invoice.

15. The total merchandise ordered by Defendant, and delivered to the Shell Gas Station, and invoiced by CHAMBERS & OWENS between July 16, 2009, and July 27, 2009, was for a total of Sixty-one Thousand Nine Hundred Eighty-seven and 82/100ths Dollars ($61,987.82).

16. Forty-eight Thousand Five Hundred Ninety-seven and 49/100ths Dollars ($48,597.49) of the total merchandise ordered by the Defendant, and delivered to the Shell Gas Station, consisted of cartons of cigarettes.

17. CHAMBERS & OWEN was not paid for the merchandise, ordered by and delivered to the Defendant's business.

18. For approximately 2-3 weeks prior to the closing the Shell Gas Station, there was a "blow out" sale at the Shell Gas Station, during which time merchandise and gasoline were sold on a cash only basis at or below cost.

19. During this "blow out" sale, Defendant's business sold gasoline and merchandise at a rate significantly lower when compared to other gas stations in the area, and the Defendant would accept only cash for the sales transactions.

20. The Defendant did not maintain any records of the gasoline and merchandise sold or the cash generated during the "blow out" sale.

21. After the "blow out" sale, and on the evening of the closing of the Shell Gas Station, Defendant, with the assistance of others, removed substantially all of the merchandise from the Shell Gas Station and placed the same into a rented moving truck.

22. Patrick Boyle was hired to assist the Defendant in moving substantially all of the merchandise from the Shell Gas Station to the moving truck.

23. The Shell Gas Station closed the day the Defendant removed substantially all of the merchandise from the Shell Gas Station into the moving truck.

24. Neither Defendant, nor Defendant's business partner, ever reopened the Shell Gas Station after closing the day on which Defendant removed substantially all the merchandise from the Shell Gas Station.

25. The Schedules filed in Defendant's Bankruptcy Case No. 09-33071, fail to account for the proceeds of the "blow out" sale, merchandise loaded into the moving truck and/or the proceeds Defendant obtained from said merchandise.

26. As of a result of Defendant's failure to account for the cash proceeds received by the Shell Gas Station during the "blow out" sale, and the Defendant's failure to explain the missing merchandise from the Shell Gas Station, the Defendant has failed to adequately explain the diminution in value in his 50% interest in the Shell Gas Station.

27. After serving Defendant with the Adversary Complaint, counsel for Plaintiff served Requests for Production of Documents upon Defendant pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure made applicable by Rules 7026 and 7034 of the Federal Rules of Bankruptcy Procedure.

28. The Requests to Produce specifically requested the Defendant produce all records relating to sales made at the Shell Gas Station and any other records that concern, in any way, business transacted at the Shell Gas Station.

29. The Defendant failed to produce any records relating to the sale or disposition of over $60,000.00 in merchandise supplied by Plaintiff to Defendant and Defendant's business over an eleven (11) day period of time preceding the closing of the Defendant's business, a Shell Gas Station.

30. Despite requests, Defendant has failed to supply Plaintiff with adequate account records relating to sales made at the Shell Gas Station or other papers or records from which the value of the Defendant's ownership interest in the Shell Gas Station can be ascertained.

31. The Defendant also failed to produce any records relating to the disposition of the proceeds from the "blow out" sale or the location of the merchandise removed from the Shell Gas Station or the proceeds of the same, which is a failure to maintain adequate records regarding assets of the estate.

## II. CONCLUSIONS OF LAW

### A.    Jurisdiction

1. This is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. §157(b)(2).

2. This matter is before the Court pursuant to 28 U.S.C. §157 and is referred to this Court pursuant to District Court Operating Procedure 15(a).

3. Venue is appropriate in this Court pursuant to 28 U.S.C. §1408 and 1409.

B.  **Discharge Standards**

4.  Plaintiff has the initial burden and must prove every element of its objection to discharge by a preponderance of the evidence. *In re Scott*, 172 F.3d 959, 966-67 (7th Cir. 1999); *In re Tanglis*, 344 B.R. 563 (Bankr. N.D. Ill. 2006).

5.  Receiving discharge through Chapter 7 is a privilege, and is not the right of any debtor. The benefit of the privilege of Chapter 7 is available to honest debtors only. *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996).

6.  If a creditor or other interested party proves by a preponderance of the evidence that the conditions specified in 11 U.S.C. §727 are met, a debtor shall not receive a discharge. *In re Juzwiak*, 89 F.3d at 427.

C.  **11 U.S.C. Section 727(a)(3)**

7.  11 U.S.C. §727(a)(3) provides that a debtor shall be denied discharge if the debtor has:

> [C]oncealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case. 11 U.S.C. §727(a)(3).

8.  The exception to discharge recited in 11 U.S.C. §727(a)(3) places an affirmative duty upon the debtor to provide creditors with at least enough information to "ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present." *In re Martin*, 141 B.R. 986, 985 (Bankr. N.D. Ill. 1992).

9. The process of denying a debtor discharge under 11 U.S.C. §727(a)(3) is a two-step process. *In re Costello*, 299 B.R. at 894.

10. First, the party alleging the debtor has failed to provide enough information has the burden of proving the information the debtor has provided is not sufficient. *In re Costello*, 299 B.R. at 894.

11. Once this initial burden is met, the burden then shifts to the debtor to "justify the lack of records" or show that the records provided were sufficient. *In re Self,* 325 B.R. at 240.

12. Verbal testimony from a debtor reciting the debtor's financial condition and transactions is not sufficient to satisfy the affirmative duty imposed by 11 U.S.C. §727(a)(3). *In re Hansen*, 325 B.R. 746, 761 (Bankr. N.D. Ill. 2005); *In re Carlson*, 231 B.R. 640, 655 (Bankr. N.D. Ill. 1999).

13. Likewise, Creditors are not required to personally reconstruct a debtor's financial situation or undertake an independent investigation of the debtor's business affairs to determine the debtor's financial condition. *In re Juzwiak*, 89 F.3d at 429.

14. Defendant, as a co-owner and manager of the Shell Gas Station, had direct control over the merchandise and the books and records of the Shell Gas Station.

15. Defendant has failed to supply any sales receipts showing sale of the merchandise, has failed to supply any deposit tickets showing deposits of the proceeds of the merchandise, and has failed to give any credible explanation for the disposition of the merchandise.

16. Defendant also failed to supply any records documenting the sale and/or disposition of the merchandise removed from the Shell Gas Station into a moving truck.

17. The Defendant put forth no evidence to justify the lack of records and documents.

D.  11 U.S.C. Section 727(a)(5)

18.  11 U.S.C. §727(a)(5) states that a debtor will not be afforded discharge if "the debtor failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. §727(a)(5).

19.  It is at the bankruptcy judge's discretion to deny discharge pursuant to 11 U.S.C. §727(a)(5) when a loss of an asset has not been adequately explained. *In re Martin*, 141 B.R. at 992.

20.  11 U.S.C. §727(a)(5) prevents a debtor from abusing "the bankruptcy process by obfuscating the true nature of his affairs and then refusing to provide a credible explanation." *In re Mantra*, 314 B.R. 723, 730 (Bankr. N.D. Ill. 2004) (quoting *In re Johnson*, 98 B.R. 359, 366 (Bankr. Ill. 1988)).

21.  11 U.S.C. §727(a)(5) is intended to relieve creditors and courts of the burden of reconstructing the debtor's financial history and condition, and instead places the burden upon the debtor to provide creditors and courts with a reasonable explanation for the loss of assets. *In re Hermanson*, 273 B.R. 538, 545 (Bankr. N.D. Ill 2002)).

22.  The test to determine whether a debtor shall be afforded discharge under 11 U.S.C. §727(a)(5) has two parts. *In re Self,* 325 B.R. at 250.

23.  First, the objecting party must show that the debtor at one time "owned <u>substantial</u> and <u>identifiable</u> assets that are no longer available for his creditors." *In re Self,* 325 B.R. at 250 (emphasis added) (citing *In re Olbur,* 314 B.R. 732, 740 (Bankr. N.D. Ill. 2004)).

8

24. Once this initial showing has been made, the burden shifts to the debtor to explain satisfactorily the losses or deficiencies. *In re Potter*, 88 B.R. 843, 849 (Bankr. N.D. Ill. 1988).

25. Two criteria must be present in order for a debtor's explanation to be satisfactory: first, the explanation must be supported by documentation, and second, the supporting documentation must eliminate the creditor or court's need to speculate as to what happened to the asset or assets. *In re Mantra*, 314 B.R. at 730. (See also: *In re Potter*, 88 B.R. at 849 (quoting *In re Baum*, 359 F.2d 811 (7th Cir. 1966)).

26. In this case, CHAMBERS & OWENS met its burden and identified a substantial and identifiable asset owned by the Defendant, the Defendant's fifty percent (50%) ownership interest in the Shell Gas Station.

27. The Debtor's ownership interest in the Shell Gas Station is an asset of the Debtor's estate. 11 U.S.C. §541.

28. Defendant and the Shell Gas Station conducted at "blow out" sale for approximately 2-3 weeks prior to the Shell Gas Station closing, during which time transactions were completed on a cash only basis.

29. Immediately prior to closing the Shell Gas Station, the Shell Gas Station received $61,987.82 in merchandise delivered to the Shell Gas Station by CHAMBERS & OWENS.

30. The Debtor's bankruptcy schedules (specifically Schedule B), list the Debtor's ownership interest in the Shell Gas Station as having a "$0" value.

31. The Defendant has not met his burden of explaining the diminution in value of his 50% interest in the Shell Gas Station, in that the Defendant has offered no explanation as to the cash generated from the "blow out" sale, the over sale or disposition of the $61,987.82 in

merchandise delivered to the Shell Gas Station within the eleven (11) day period prior to the closing of the Shell Gas Station, or the location and/or disposition of the moving truck load of merchandise removed from the Shell Gas Station by the Debtor on the night the Shell Gas Station closed.

32. Defendant's bankruptcy schedules do not list the merchandise removed from Shell Gas Station as an asset of the estate, and Defendant has been unable to identify the proceeds from the sale of the merchandise.

33. As such, the Defendant has failed to meet his burden of explaining the diminution in value of his 50% interest in the Shell Gas Station.

### III. CONCLUSION

Wherefore, Judgment will separately enter against Defendant pursuant to 11 U.S.C. Section 727(a)(3) and 11 U.S.C. Section 727(a)(5), sustaining the Plaintiff's objection to the Defendant's discharge, and the automatic stay under 11 U.S.C. Section 362 will be modified so all creditors may proceed against the Debtor/Defendant.

Dated: Nov 18, 2010

ENTER:

Honorable Judge Jack B. Schmetterer

NOV 18 2010

Prepared by:

Jamie S. Cassel, Esq.
Michael G. Schultz, Esq.
RENO & ZAHM LLP
2902 McFarland Road, Suite 400
Rockford, IL 61107
Ph. (815) 987-4050
Fax (815) 987-4092